## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

CINDY LYNITA DAWSON           *     CIVIL ACTION NO.  16-0109

VERSUS                       *     JUDGE ELIZABETH E. FOOTE

CAROLYN W. COLVIN, ACTING    *     MAG. JUDGE KAREN L. HAYES
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION

### REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Cindy Dawson protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on July 5, 2012.  (Tr. 135, 111-123).  She alleged disability as of March 25, 2012, because of fibromyalgia, heart attack, taking anti-depressants, and manic depressive disorder "with physic."  (Tr. 135, 139).  The claims were denied at the initial stages of the administrative process.  (Tr. 66-67).  Thereafter, Dawson requested and received a May 31, 2013, hearing before an Administrative Law Judge ("ALJ").  (Tr. 25-65 ).  However, in an August 28, 2014, written decision, the ALJ determined that Dawson was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to other work that exists in substantial numbers in the national economy.  (Tr. 8-20).  Dawson appealed the adverse decision

to the Appeals Council.  On December 15, 2015, however, the Appeals Council denied

Dawson's request for review; thus the ALJ's decision became the final decision of the

Commissioner.  (Tr. 1-3).

On January 23, 2016, Dawson sought review before this court.  She asserted seven

assignments of error in her brief.  However, the assignments of error may be aggregated, as

follows,

(1)     the ALJ erred in failing to find that plaintiff's severe impairments met or equaled
        listings 12.03 and/or 12.04;

(2)     the ALJ's residual functional capacity assessment is not supported by substantial
        evidence; and

(3)     had the ALJ included additional limitations of functioning in her residual
        functional capacity assessment, then there would be no other jobs that plaintiff
        could perform in the national economy at step five of the sequential evaluation
        process.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa*

*v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported

by substantial evidence when the decision is reached by applying improper legal standards.

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

*Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a

preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's

2

determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

> (1)   An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

> (2)   An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

> (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without

the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See Boyd v. Apfel, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987).

## **ALJ's Findings**

### I. **Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 13). At step two, she found that the claimant suffered severe impairments of fibromyalgia; chronic obstructive pulmonary disease ("COPD"); coronary artery disease status post stent placement; mood disorder; and generalized anxiety disorder. (Tr. 13). She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 13-15).

### II. **Residual Functional Capacity**

4

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[1] except no ladders, ropes, or scaffolds; the need to avoid unprotected heights and dangerous moving machinery; frequently able to handle, finger, and feel with the dominant right hand; the need to avoid concentrated exposure to gases, fumes, and other irritants; but able to perform simple, routine and repetitive tasks, with occasional decision-making, the ability to occasionally adapt to changes in the workplace, and no more than occasional contact with the public, coworkers, and supervisors.  (Tr. 15-18).

III.    **Steps Four and Five**

The ALJ concluded at step four of the sequential evaluation process that the claimant was unable to perform her past relevant work.  (Tr. 18).  Accordingly, she proceeded to step five.  At this step, the ALJ determined that the claimant was a younger individual, with at least a high school education, and the ability to communicate in English.  *Id*.  Transferability of skills was immaterial.  *Id*.

The ALJ then observed that given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, the Medical-Vocational Guidelines would direct a finding of not disabled.  20 C.F.R. § 404.1569; Rule 202.21, Table 2, Appendix 2, Subpart P, Regulations No. 4.  (Tr. 19-20).  However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether,

---

[1]   Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

and to what extent the additional limitations eroded the occupational base for light work.  *Id*.  In response, the VE identified the representative jobs of basket filler – light, *Dictionary of Occupational Titles* ("DOT") Code # 529.687-010; and housekeeper cleaner – light, DOT # 323.687-014,[2] that were consistent with the ALJ's RFC and the claimant's vocational profile. *Id*.[3]

## Analysis

## I.    Step Three

To establish that a claimant's injuries meet or medically equal a listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment).  *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).  An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990).  If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present.  *Selders*, 914 F.2d at 620.

In this case, plaintiff contends that she meets the listings for mental impairments – specifically, listings 12.03 and/or 12.04.[4]  The required level of severity for listings 12.03 and

---

[2]  The VE also identified additional jobs at the sedentary level.  (Tr. 19, 211).

[3]  The VE responded that for the basket filler job, there were 426,670 positions nationally and 6,200 positions regionally.  (Tr. 19, 211).  For the housekeeper-cleaner job, there were 917,470 positions nationally and 13,900 regionally.  *Id*.  This incidence of work constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[4]  **12.03  Schizophrenia spectrum and other psychotic disorders (see 12.00B2), satisfied by A and B, or A and C:**

    A. Medical documentation of one or more of the following:

        1. Delusions or hallucinations;
        2. Disorganized thinking (speech); or

3. Grossly disorganized behavior or catatonia.
AND
B. Extreme limitation of one, or marked limitation of two, of the following areas
of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that
is, you have a medically documented history of the existence of the disorder over
a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial
support(s), or a highly structured setting(s) that is ongoing and
that diminishes the symptoms and signs of your mental
disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to
changes in your environment or to demands that are not already part of
your daily life (see 12.00G2c).

**12.04 Depressive, bipolar and related disorders (see 12.00B3), satisfied by A and B, or A and
C:**

A. Medical documentation of the requirements of paragraph 1 or 2:

1. Depressive disorder, characterized by five or more of the following:

a. Depressed mood;
b. Diminished interest in almost all activities;
c. Appetite disturbance with change in weight;
d. Sleep disturbance;
e. Observable psychomotor agitation or retardation;
f. Decreased energy;
g. Feelings of guilt or worthlessness;
h. Difficulty concentrating or thinking; or
i. Thoughts of death or suicide.

2. Bipolar disorder, characterized by three or more of the
following:

a. Pressured speech;
b. Flight of ideas;
c. Inflated self-esteem;
d. Decreased need for sleep;
e. Distractibility;
f. Involvement in activities that have a high probability of painful consequences
that are not recognized; or

7

12.04 are met when the requirements of paragraphs A and B or paragraphs A and C are satisfied.

To evaluate the severity of mental impairments, the regulations require that a psychiatric review technique form be completed during the initial and reconsideration phases of the administrative review process.  20 C.F.R. §§ 404.1520a and 416.920a.  The psychiatric review technique rates the degree of functional limitation in four broad areas:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  *Id*.  The ALJ must incorporate the pertinent findings and conclusions of the psychiatric review technique into her decision.  *Id*.

Furthermore, Social Security Ruling 96-6p specifies that,

[t]he administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or

---

g. Increase in goal-directed activity or psychomotor agitation.
AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).
OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1

psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. **However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.**
POLICY INTERPRETATION RULING TITLES II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDINGS OF FACT BY STATE AGENCY MEDICAL AND PSYCHOLOGICAL CONSULTANTS AND OTHER PROGRAM PHYSICIANS AND PSYCHOLOGISTS AT THE ADMINISTRATIVE LAW JUDGE AND APPEALS COUNCIL LEVELS OF ADMINISTRATIVE REVIEW; MEDICAL EQUIVALENCE, SSR-96-6p (July 2, 1996) (emphasis added).[5]

In this case, the ALJ considered the paragraph B criteria, but found that Dawson suffered limitations no greater than moderate, and that she had no episodes of decompensation of extended duration.  (Tr. 14-15).  The ALJ also found in conclusory fashion that the evidence did not support the presence of the paragraph C criteria.  *Id*.  However, the record does not contain a psychiatric review technique or a finding regarding medical equivalence by an agency psychologist.  Moreover although agency psychologist, Julia Wood, Ph.D., apparently completed a mental residual functional capacity form ("MRFC"),[6] neither the MRFC, nor the psychiatric review technique form appear in the record.[7]

At the May 31, 2013, hearing in this matter, the following exchange occurred,

ALJ:        I was looking at 12.04 (a) and (b), but what I want to do is get the updated medical records because we don't have anything for 2013 and she's had some recent treatment so –

ATTY:      Okay, yeah.

ALJ:        I really don't want to send her out for a CE [consultative

---

[5]  Social Security Rulings are binding on all components of the SSA.  *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir.1993).

[6]  Tr. 311.

[7]  Of course, by seemingly completing the MRFC, Dr. Wood implicitly found that Dawson's impairments did not meet or equal a listing.

examination] if I don't have to.

ATTY:        I think it might be a good idea.

ALJ:         Let's wait and see what the records say . . .

ALJ:         Okay and then that will . . .  if it's not a pay then I'll do that.
(Tr. 61-62).

Following receipt of additional medical records, however, the ALJ neither issued a ruling

favorable to plaintiff, nor sent her to undergo a consultative mental status evaluation.  Rather, in

November 2013, she sent written interrogatories to medical expert and psychologist, Jack

Bentham, Ph.D., to elicit his opinion as to whether Dawson's impairments met or equaled or a

listing, and if they did not, then to complete a medical source statement of ability to do work-

related activities (mental).  (Tr. 510-527).

Dr. Bentham, demurred, however.  He explained that he was unable to issue a medical

opinion because, despite his review of Dawson's medical records, they did not include a

psychiatric review technique, a mental residual functional capacity assessment, or an

independent mental status examination.  He emphasized that in the absence of these documents

he was unable to render a medical evaluation as to whether Dawson's impairments met or

equaled the criteria for paragraphs A, B, or C of the listing(s).  (Tr. 514).

Undeterred, the ALJ proceeded to issue the step three finding without the benefit of a

psychiatric technique review by any agency psychologist or medical expert.  In so doing, she

transgressed SSR 96-6p.  Although procedural perfection in administrative proceedings is not

required, the court is unable to conclude in this case that the claimant's "substantial rights" were

not affected by the omission.  *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).  Here, the

record contains evidence which suggests that plaintiff may meet or equal listing 12.04.[8]  Remand

is required.  *Audler, supra*.

## II.     Residual Functional Capacity Assessment

The court observes that the ALJ's residual functional capacity assessment ("RFC")

regarding the effects of Dawson's physical impairments is supported by the essentially benign

conclusion of the consultative physician, Scott Beach, M.D.  (Tr. 313-317).[9]  However, the same

cannot be said for Dawson's mental impairments.  No psychologist or psychiatrist of record,

examining or non-examining, issued a medical source statement regarding the effects of her

mental impairments.  Although plaintiff's treating mental health professionals typically

characterized Dawson's impairment as moderate (and even mild on at least one occasion), they

regularly assigned a Global Assessment of Functioning ("GAF")[10] score of 51,[11] which is the

---

[8]   There is evidence that she suffers a depressed mood (Tr. 302-304), diminished interest in almost all activities (Tr. 486), sleep disturbance (at times) (Tr. 476), decreased energy (Tr. 302-304), feelings of guilty or worthlessness (Tr. 291), difficulty concentrating or thinking (Tr. 44-45), and thoughts of death or suicide (Tr. 279-281).  Furthermore, there is evidence that her symptoms have lasted at least two years, with mental health treatment, and that she has a minimal capacity for changes in her environment.  (Tr. 43, 182).

[9]   On November 3, 2012, Dawson underwent a consultative physical examination with Scott Beach, M.D. (Tr. 313-317).  At that time, Dawson denied low back pain, knee pain, shoulder pain or neck pain.  *Id*.  She ambulated with a cane.  *Id*.  Her gait was normal.  *Id*.  She was able to rise from a sitting position with assistance, stand on tiptoes, heels, and tandem walk with assistance.  *Id*.  She was able to bend without difficulty, but only ½ squat secondary to pain.  *Id*.  She exhibited 5/5 grip strength with adequate fine motor movements, dexterity, and ability to grasp objects bilaterally.  *Id*.  She did not appear depressed or anxious.  *Id*.  Her recent and remote memory were intact.  *Id*.  She had good insight and cognitive function.  *Id*.  She had 5/5 strength, bilaterally, in all muscle groups.  *Id*.
   Beach diagnosed fibromyalgia and manic depressive disorder.  *Id*.  He opined that she should be able to sit, walk, and/or stand for a full workday, lift/carry objects without limitations, hold a conversation, respond appropriately to questions, and carry out and remember instructions.  *Id*.  She had a full range of motion in all areas. *Id*.

[10]   "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd*, 239 F.3d at 701 n2 (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)).

[11]   A GAF score between 51-60 is defined as "**[m]oderate symptoms** (e.g. flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, no friends, unable to keep a job).  (DSM-IV, pg. 32).

lowest "moderate" score and bordering on "serious."  *See e.g.*, Tr. 302-305, 475, 480, 486, 502.

The court further emphasizes that the instant case is unique in that, following receipt of plaintiff's supplemental medical records, the ALJ apparently considered the record insufficient to render a decision.  Thus, she propounded interrogatories to medical expert, Dr. Bentham.  However, instead of buttressing the record, Dr. Bentham merely confirmed that the record was insufficient *even for a medical expert* to render a medical source statement.

Nevertheless, and in the absence of any additional evidence, the ALJ proceeded to divine the effects of plaintiff's mental impairments.  The arbitrariness of the assessment is confirmed by the six hypotheticals with varying degrees of functional limitations that she sent to the VE some six months after Dr. Bentham issued his non-opinion.  (Tr. 210-223).  In other words, the fact that the RFC appeared indeterminate at the time the ALJ solicited the VE's opinion, underscores that, at minimum, the mental component of the RFC was not supported by substantial evidence.

In addition, the ALJ ultimately limited Dawson to simple, routine and repetitive tasks, which, according to the VE, resulted in the ability to perform only unskilled jobs.  (Tr. 210).  The court observes that,

> [t]he basic mental demands of competitive, remunerative, *unskilled* work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  A *substantial loss* of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15 (emphasis added).

Furthermore, according to the Commissioner's Program Operations Manual System ("POMS"),

> "[s]ubstantial loss" cannot be precisely defined. It does not necessarily relate to any particular adjective, number, or percentage. In practical terms, an individual has a substantial loss of ability to perform a basic mental activity when he/she cannot perform the particular activity in regular, competitive employment but, at best, could do so only in a sheltered work setting where special considerations and attention are provided. **This requires professional judgment, on the basis**

**of the evidence in file in each case**. The impairment in a claim of this type may meet or equal the listed medical criteria. **Therefore, before making a determination that includes vocational evaluation, the adjudicator should discuss the case with a psychiatrist or psychologist to learn whether a significant part of the evidence had been previously overlooked or underrated**.

POMS, DI 25020.010 *Mental Limitations* (emphasis added).

Again, however, conspicuously absent from the instant record is a medical source statement by any examining psychologist or a mental residual functional capacity assessment by a non-examining agency psychologist.  *See* POMS DI 24510.090, *Mental RFC Assessment Form* SSA-4734-F4-SUP.  Of course, the importance of such medical source statements or assessments is to provide the adjudicator with a professional opinion regarding the effects of the claimant's impairments on her functional capacity.

In sum, the court is not persuaded that the ALJ's unassisted mental residual functional capacity assessment is supported by substantial evidence.  *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater*, 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where:  no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

**III.    Step Five**

Because the foundation for the ALJ's step five determination was premised upon a residual functional capacity assessment that is not supported by substantial evidence, the court

further finds that the ALJ's ultimate conclusion that plaintiff is not disabled is likewise not supported by substantial evidence.  Remand is required.

<u>**Conclusion**</u>

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 3rd day of February 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE